## IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. THOMAS AND ST. JOHN

| | |
|---|---|
| CARY CHAPIN, BARBARA DOUMA, EMILY BRATTON, JOHN AND DEAN BALDWIN, TERRY R. WITHMAN, ANN AND JEFFREY MCCRAVE, CELSO PRINCIPAAL, HARRY EISENER, CYNTHIA SAUERS, ELISA ADAMS, DENISE AND TRUMAN BARBIER, JEAN AND STEPHEN NEMETH, AND IRENE PATTON, *ET AL.* | CASE NO. 3:12-cv-00077<br><br>ACTION FOR DAMAGES<br><br>JURY TRIAL DEMANDED |
| Plaintiffs, | |
| v. | |
| GREAT SOUTHERN WOOD PRESERVING, INCORPORATED, PUTNAM LUMBER & EXPORT COMPANY, AND PUTNAM FAMILY PROPERTIES INC. | |
| Defendants. | |
| PUTNAM LUMBER & EXPORT COMPANY, PUTNAM FAMILY PROPERTIES INC., | |
| Third Party Plaintiff, | |
| v. | |
| WHITECAP INVESTMENT CORP. d/b/a PARADISE LUMBER AND MSI BUILDING SUPPLIES | |
| Third Party Defendants. | |
| WHITECAP INVESTMENT CORP. d/b/a PARADISE LUMBER, | |
| Third Party Plaintiff, | |
| v. | |
| GREAT SOUTHERN WOOD PRESERVING, INCORPORATED, | |
| Third Party Defendant. | |

**RESPONSE TO COURT'S VERBAL ORDER**
**TO PROVIDE ANALYSIS OF ASSIGNMENT**

1

I.   **An Assignment of the Right To Sue Confers Standing To Sue Upon the Assignee**

"[T]raditionally, an assignee is but a substitute for the assignor possessing all of the rights and obligations formerly enjoyed by the assignor." *Amboy Nat. Bank v. Generali-U.S. Branch*, 930 F. Supp. 1053, 1059 (D.N.J. 1996) (citing Corbin On Contracts, § 861 (7th Ed.1989)).  Thus, the general rule is that an assignment vests in the assignee the rights of an assignor to sue.  *See N. Jersey Brain & Spine Ctr. v. Aetna, Inc.*, 801 F.3d 369, 372 (3d Cir. 2015) ("We hold that as a matter of federal common law, when a patient assigns payment of insurance benefits to a healthcare provider, that provider gains standing to sue for that payment under ERISA § 502(a). An assignment of the right to payment logically entails the right to sue for non-payment.") (citations omitted); *Clouding IP, LLC v. Google Inc.*, 61 F. Supp. 3d 421, 429 (D. Del. 2014), *reargument denied sub nom. Clouding IP, LLC v. AT & T Mobility LLC*, No. CV 13-1342-LPS, 2014 WL 6466833 (D. Del. Nov. 17, 2014) ("if a patentee transfers 'all substantial rights' in the patent to an assignee, "this amounts to an assignment or a transfer of title, which confers constitutional standing on the assignee to sue for infringement in its own name alone"); *Bloom v. Indep. Blue Cross*, No. CIV.A. 14-2582, 2015 WL 4598016, at *6 (E.D. Pa. July 31, 2015) (noting that "other cases have considered the rights of medical services providers to sue insurance companies and found they may sue with *indirect* standing after receiving an assignment of the right to sue from an insured patient"); *EMC Corp. v. Pure Storage, Inc.*, No. CV 13-1985-RGA, 2016 WL 805814, at *2 (D. Del. Feb. 29, 2016) ("A patent owner's transfer of 'all substantial rights' in the asserted patents to an exclusive licensee 'is tantamount to an assignment of those patents to the exclusive licensee, conferring standing to sue solely on the licensee' and divesting the patent owner of any right to sue."); *McDowell v. U.S. ex rel. Holder*, No. CIV.A. 12-1302-SLR, 2013 WL 1953340, at *2 (D. Del. May 10, 2013), *report and*

*recommendation adopted sub nom. McDowell v. United States*, No. CIV. 12-1302-SLR/SRF, 2013 WL 2456742 (D. Del. June 5, 2013) ("[I]f a patentee transfers 'all substantial rights' to the patent, this amounts to an assignment or a transfer of title, which confers constitutional standing on the assignee to sue for infringement in its own name alone."); *Camp Ne'er Too Late, LP v. Swepi, LP*, No. 4:14-CV-01715, 2016 WL 2594186, at *13*16 (M.D. Pa. May 5, 2016) (under Pennsylvania contract law, lessor had standing to sue for breach of lease, although lessor was not signatory to lease); *Winn v. Ameritite, Inc.*, 731 F. Supp. 2d 1093 (D. Idaho 2010) (assignments of rights under a land purchase and sale agreement among the putative purchasers transferred standing to a sole purchaser to bring an action against the escrow agent for breach, as the real party in interest under the federal rules, when the contractual language explicitly transferred potential causes of action to the sole purchaser, and the transfer did not prejudice the escrow agent).

Indeed, "[w]hen an assignor retains no rights to the assigned property, the assignor lacks standing to enforce any agreements regarding that property." 6 Am. Jur. 2d Assignments § 136 (citing numerous cases including *Borkowski v. Fraternal Order of Police, Philadelphia Lodge No. 5*, 155 F.R.D. 105, 30 Fed. R. Serv. 3d 312 (E.D. Pa. 1994)). *See also Schaub v. Geico Ins. Co.*, No. CIV.A. 14-5570 MAS, 2015 WL 3452917, at *3 (D.N.J. May 29, 2015) ("As this Court has held, 'the act of assignment itself extinguishes all of the assignor's rights in everything that is being assigned.'… It follows that, because an assignor has no personal stake in the outcome of the controversy, he lacks standing and cannot invoke the jurisdiction of the federal courts.").

## II. Amendment of the Pleading is Not Required Where Assignment of Claims Takes Place After Suit is Instituted

Where, as here, the assignment of claims was executed after the lawsuit was initiated, the action may continue in the names of assignors (here, Putnam and Whitecap), or the assignee

3

(here, Plaintiffs) may be substituted in their places. *See e.g. Cole v. Boyd*, 719 A.2d 311, 314 (Pa. Super. Ct. 1998) (substitution of parties is permissible but not mandatory); *Bank of Am., N.A. v. Ellsworth*, No. 1395 WDA 2014, 2015 WL 9262916, at *3 (Pa. Super. Ct. Dec. 17, 2015) ("we conclude that the fact that BANA continued as the named plaintiff in this case despite assigning the mortgage to Nationstar did not affect the substantive rights of the Ellsworths"); *Thistle, Inc. v. Tenneco, Inc.*, 872 P.2d 1302, 1305 (Colo. App. 1993) ("even if there has been no assignment of the claim at the time suit is instituted, if the plaintiff is assigned the claim at some time prior to trial, such assignment is sufficient to make the plaintiff a real party in interest"); *Quantum Clean Energy Sols., LLC v. Mercury Solar Sys., Inc.*, No. CIV.A. 12-2820 SRC, 2014 WL 3900867, at *1 (D.N.J. Aug. 11, 2014) (granting plaintiff's motion to amend and denying motions for summary judgment where the claims at issue were assigned and plaintiff sought to substitute the assignees as plaintiffs); *Winn v. Amerititle, Inc.*, 731 F. Supp. 2d 1093 (D. Idaho 2010) (under the Federal Rules, an assignment of rights in an action to a third party can give the assignee proper standing as the real party in interest, even when the claim is not assigned until after the action has been instituted); *Infodek, Inc. v. Meredith-Webb Printing Co., Inc.*, 830 F. Supp. 614 (N.D. Ga. 1993) (even when a claim is not assigned until after the action is instituted, the assignee is the real party in interest and can maintain the action provided the assignment occurs before trial, the party is a real party in interest in at least one other claim asserted in the action, and the defendant suffers no prejudice from recognizing the assignment).

### III. The Claims Against Putnam Lumber and Whitecap Should Be Dismissed Without Prejudice Except As To Putnam Lumber

Whitecap is not a party defendant as to Plaintiffs in this matter (though Plaintiffs do have a case pending against Whitecap in Superior Court). Rather, Whitecap is a third party defendant brought into this case by Putnam, which made third party claims against Whitecap for

indemnification and contribution. Whitecap, in turn, filed counterclaims against Putnam for breach of contract, indemnification, and contribution, as well as third party claims against Great Southern for indemnification and contribution.

Putnam and Whitecap have moved for dismissal with prejudice of each entity's claims against the other in this District Court matter. *See* Dkt. 1746, Joint Motion to Dismiss Claims of Settled Parties. Thus, Whitecap is no longer a party in this District Court case at all anymore— Great Southern has asserted no claims against Whitecap and Whitecap no longer has standing to file claims against Great Southern. And, inasmuch as dismissal results in no claims being asserted against Whitecap in this case, the consent judgment provided for by the parties' settlement agreement must be filed in the pending Superior Court case, where Whitecap is being sued directly by Plaintiffs.

The District Court does not have jurisdiction over the consent judgment of Whitecap. The District Court's jurisdiction here is based on diversity (*see* Dkt. 447, Third Amended Complaint, ¶71), and to consider Plaintiffs' consent judgment against Whitecap would destroy diversity jurisdiction since Plaintiffs are Virgin Islands citizens and Whitecap is a Virgin Islands entity. *Sty-Lite Co. v. Eminent Sportswear Inc.*, 115 F. Supp. 2d 394, 398 (S.D.N.Y. 2000) ("if either the corporation's place of incorporation or principal place of business destroys diversity, then the courts will not have diversity jurisdiction.").

It makes judicial sense to have the Superior Court also decide the consent judgment issue as to Putnam, which is also a party in the same Superior Court case. Indeed, Great Southern, Putnam, and Whitecap have all filed the same claims against each other in the Superior Court case and the discovery completed in this matter will be used in the Superior Court case. A contrary holding would result in two different courts holding trials on the consent judgment

issues. Not only that, if the District Court requires the consent judgments to be filed before it (which it should not), that would result in the necessity of Plaintiffs presenting evidence regarding the claims and damages of *all* Plaintiffs in this litigation, including those Plaintiffs' whose claims have (or will be) dismissed on the basis of Great Southern's motions for summary judgment, to allow the Court to assess the reasonableness of the consent judgment. See *In re Tutu Water Wells Contamination Litig. ("Tutu Wells"),* 78 F. Supp. 2d 423, 431 (D.V.I. 1999), and *Evanston Ins. Co. v. Treister,* 794 F.Supp. 560 (D.V.I. 1992), regarding the reasonableness evaluation.

## IV. The Determination of the Reasonableness of a Consent Judgment is for the Finder of Fact

In both *In re Tutu Water Wells Contamination Litig. ("Tutu Wells"),* 78 F. Supp. 2d 423, 431 (D.V.I. 1999), and *Evanston Ins. Co. v. Treister,* 794 F.Supp. 560 (D.V.I. 1992), the settling defendant assigned to the plaintiff in the underlying action its claimed rights of indemnification for a specific amount, although the settling defendant had not actually incurred that specific amount in damages. The courts in both cases found that the consent judgments were enforceable, or potentially enforceable, because, among other things, the settlement amount was "reasonable" because the claimed potential liability had some basis in fact.

> Virgin Islands case law clearly establishes that, as long as the agreement is reasonable, an insured may seek indemnification against its insurer for settlements reached with injured third parties. *See Cay Divers,* 812 F.2d at 870–71. In addition, Virgin Islands' courts have consistently allowed third parties to enforce against insurers, within policy limits, consent judgments that are conditioned upon the third party's covenant not to execute against the insured. *See Treister,* 794 F.Supp. at 574; *Lesville James,* No.1995/117–F, slip op. at 14 (noting that "the fact the injured party agrees to seek relief from the insurer only, and not from the insured, does not vitiate the agreement").

*Tutu Wells,* 78 F. Supp. 2d 423, 431 (D.V.I. 1999).

The *Tutu Wells* opinion cogently sums up the analysis for whether a consent judgment

will *automatically* be deemed to be collusive or unreasonable:

> The defendant argues that the percentage of liability that Morgan [the settling service station owner] acknowledged in the consent judgment (approximately 95%) 'is unconscionable and by itself taints the entire agreement.' (Cigna Br. at 31). This Court disagrees.
>
> In *Evanston v. Ins. Co. Treister*, 794 F.Supp. 560 (D.VI. 1992), the court addressed similar allegations of a collusive assignment/consent judgment. The court adopted a standard for assessing allegations of collusion within the context of consent judgments rendered against an insured, providing that an insured is not required to establish his actual liability in order to recover the amount of the settlement from an insurance company "so long as ... a potential liability on the facts known to the [insured is] shown to exist, culminating in a settlement in an amount reasonable in view of the size of the possible recovery and degree of probability of claimant's success against the [insured]." *Id.* at 573 (*quoting Damanti v. A/S Inger*, 314 F.2d 395, 397 (2d Cir.1963)) (emphasis added). Thus, under *Treister*, the focus of the agreement's reasonableness is based upon the potential, not actual liability, of the insured.
>
> In the instant action, Texaco's claim against Morgan sought over eighteen million dollars in damages. While Virgin Islands' case law has noted that '[i]t is the extent of the defendants' exposure to liability and not mere allegations in the plaintiff's complaint that governs the appraisal of reasonableness, the Court finds that given the nature of the plaintiff's claim against Morgan and the damages incurred by Texaco in the underlying well owner claims, the amount settled upon was not unreasonable as a matter of law. *Lesville James v. Zurich–American Ins. Co. of Illinois,* No.1995/117–F, slip op. at 15 (D.V.I. Sept. 9, 1998) (*quoting Vargas v. Hudson County Bd. of Elections*, 949 F.2d 665, 674 (3d Cir.1991)). Therefore Cigna's argument that the amount stipulated to in the consent judgment renders it collusive as a matter of law must be rejected.
>
> Lastly, Cigna contends that the consent judgment was not entered into in 'good conscience' since Vernon Morgan knew that Texaco 'had no intention of bringing any legal action against Morgan, but instead planned to maximize Morgan's previously assigned insurance rights by entering a consent judgment against him, which they never intended to collect from Morgan.' (Cigna Br. at 32). Thus the defendant argues the settlement agreement was necessarily unreasonable, since at the time Morgan entered into it he did not 'in good conscience' believe that he was exposed to a potential jury verdict, a requirement addressed by the court in *Treister*. *See Treister*, 794 F.Supp. at 573 (finding that a consent judgment was reasonable because "[i]n the event that the case went to trial, [the insured] could, in good conscience, expect that a verdict [above the agreed settlement amount] might be rendered against him").
>
> Cigna cites numerous facts in support of its assertion. However, none of these

>facts conclusively prove the defendant's allegation that Texaco assured Morgan it never intended to seek an actual judgment against him. Moreover, the nature of Cigna's argument involves questions of intent, an area of the law that courts have determined are best left to the trier of fact. Thus Cigna's claim that the consent judgment is collusive as a matter of law must be rejected.

*Tutu Wells*, 78 F.Supp.2d at 429.

In *Tutu Wells*, the Court found that the amount of the settlement was not unreasonable as a matter of law, thereby denying summary judgment and allowing the issue to go before the finders of fact for a final determination. *Id*. at 429. Case law makes clear that the question of whether the consent judgment is reasonable is a fact-intensive question that should be decided by the jury. *See also Damanti v. A/S Inger*, 314 F.2d 395, 397 (2d Cir.1963) (Evidence supported jury's answer that ship's payment of $30,000 in settlement of claim of longshoreman who suffered herniated intervertebral disc and compressed fracture of lumbar vertebrae was reasonable compromise, even though jury believed that it would have credited evidence against ship's liability. Jury's findings that amount paid by ship in settlement was reasonable compromise though it was plainly erroneous as to liability were clear and consistent.); *Andrew v. Century Sur. Co.*, 134 F. Supp. 3d 1249, 1268 (D. Nev. 2015) (Fact questions existed regarding whether settlement agreement between motorist's employer and injured cyclist was the product of fraud or collusion under Nevada law, thus precluding summary judgment for employer's insurer in cyclist's action, as assignee of motorist's employer, against employer's insurer for breach of contract after cyclist, motorist, and motorist's employer entered into settlement agreement allowing entry of default judgment against motorist and employer.)

Here, Plaintiffs communicated their efforts to settle and made a demand on Great Southern, but it refused to meet the demand to indemnify and defend. Plaintiffs also advised Great Southern of the terms of their settlements with Putnam and Whitecap and asked Great

8

Southern to pay those sums to Plaintiffs. Here, there is absolutely no evidence of collusion. *See In re Tutu Water Wells Contamination Litig.*, 78 F. Supp. 2d 423, 429 (D.V.I. 1999) (citing *Evanston v. Ins. Co. Treister*, 794 F.Supp. 560, 573 (D.Vi.1992)) (the "standard for assessing allegations of collusion within the context of consent judgments rendered against an insured, providing that an insured is not required to establish his actual liability in order to recover the amount of the settlement from an insurance company 'so long as ... a potential liability on the facts known to the [insured is] shown to exist, culminating in a settlement in an amount reasonable in view of the size of the possible recovery and degree of probability of claimant's success against the [insured].'"); *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 751 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986) ("Settlement, however, is hardly prima facie evidence of collusion. Counsel acted reasonably and professionally toward one another."). Simply put, the settlements are reasonable.

Dated: June 2, 2016         Respectfully submitted,

/s/ *Lee J. Rohn*
Lee J. Rohn, Esq.
Lee Rohn & Associates
1101 King Street
Christiansted, St. Croix
U.S. Virgin Islands 00820
Tel: (340) 778-8855
Fax: (340) 773-2954
*Attorneys for Plaintiffs*

By: /s/ *Daniel Cohen*
Daniel Cohen (admitted pro hac vice)
CUNEO GILBERT & LADUCA, LLP
507 C Street NE
Washington, DC 20002
Telephone: (202) 789-3960
Facsimile: (202) 789-1813
Email: danielC@cllllcolaw.com
*Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

      **THIS IS TO CERTIFY** that on June 2, 2016, I electronically filed the foregoing with the Clerk of the court using the CM/ECF system, which will send a notification of such filing (NEF) to all parties, or their counsel of record, through the CM/ECF system to the following:

Daryl C. Barnes, Esq.
Bryant, Barnes, Moss & Beckstedt
1134 King Street, 2nd Floor
Christiansted, VI 00820
Email: dbarnes@bryantbarnes.com
Attorney For: Great Southern Wood Preserving, Inc.

John Stewart Baker, IV, Esq.
Lightfoot, Franklin & White, LLC
400 North 20th Street
Birmingham, AL 35203
Email Address: jbaker@lightfootlaw.com
Attorney For: Great Southern Wood Preserving, Inc.

Lee M. Hollis, Esq.
Lightfoot, Franklin & White, LLC
The Clark Building
400 20th Street North
Birmingham, AL 35203-3200
Email Address: lhollis@lightfootlaw.com
Attorney For: Attorney for Great Southern Wood Preserving, Inc.

Stewart Andrew Kelly, Esq.
Lightfoot, Franklin & White, LLC
400 20th Street North
Birmingham, AL 35203-3200
Email Address: dkelly@lightfootlaw.com
Attorney For: Attorney for Great Southern Wood Preserving, Inc.

Lisa Michelle Kömives, Esq.
BOLTNAGI, PC
5600 Royal Dane Mall
Suite 21
St. Thomas, VI 00802-6410
Email Address: lkomives@vilaw.com; lisa@vilaw.com; rnagi@vilaw.com
Attorney For: Putnam Lumber & Export Company, and Putnam Family Properties, Inc.

Robert Carlson, Esq.
Lee, Hernandez, Landrum, Garofalo & Blake, A.P.C.
100 N. Biscayne Boulevard
Suite 605
Miami, FL  33132
Email: rcarlson@lee-lawfirm.com; dmiller@lee-lawfirm.com; bgreaves@lee-lawfirm.com
Attorney For: Putnam Lumber & Export Company, and Putnam Family Properties, Inc.

Alex Moskowitz, Esq.
Chad Messier, Esq.
Dudley, Topper and Feuerzeig, LLP
1000 Frederiksberg Gade
St. Thomas, VI  00804
Email Address: amoskowitz@dtflaw.com; fthomas@dtflaw.com, cmessier@dtflaw.com
Attorney For: Third-Party Defendant MSI Building Supplies, Whitecap Investment Corp. d/b/a Paradise Lumber


BY: /s/ Daniel M. Cohen